UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN W. NOLAN,

    Plaintiff,

vs.                                                                                     Case No. 3:04-cv-491-J-20MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER

**THIS CAUSE** is before the Court on Plaintiff Steven Nolan's Complaint (Doc. No.1), seeking judicial review of a final administrative decision denying his claim for Social Security disability benefits and Supplemental Security Income payments (Doc. No. 1).[1] The Court has thoroughly reviewed the record, the briefs and applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on April 23, 2001, alleging he became unable to work on June 11, 1998. (Tr. 154-156). The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. 112-

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. See Doc. No. 4.

122). Plaintiff subsequently filed a timely request for a hearing on the matter. (Tr. 110). Plaintiff's request was granted and a hearing was conducted by an administrative law judge ("ALJ") on August 15, 2003. (Tr. 30-90).

The ALJ issued a decision on November 4, 2003, concluding Plaintiff was not disabled. (Tr. 16-28). Under sections 216(i), 223, 1602 and 1614(a)(3)(A) respectively, of the Social Security Act, the ALJ further concluded Plaintiff was not entitled to a period of disability or DIB, and ineligible for SSI payments. Id. Plaintiff filed a timely request for review by the Appeals Council which was denied on April 16, 2004. (Tr. 5-7). Consequently, the ALJ's November 4, 2004 decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.955, 404.981. Plaintiff then filed a timely Complaint (Doc. No. 1) in the United States District Court on August 26, 2004.

## II. NATURE OF DISABILITY CLAIM

### A. The Complaint

In his Memorandum in support of the Complaint (Doc. No. 15), Plaintiff presents two arguments. First, Plaintiff argues the ALJ erred by concluding the severity of his alleged neck, shoulder and left upper extremity impairments did not medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, Plaintiff contends proper consideration of the listed impairment most analogous to his condition directs a finding that it medically equals Listing 1.04A (disorders of the back). Second, Plaintiff argues the ALJ's finding that he could perform other work existing in the national economy is not supported by substantial evidence. According to Plaintiff, his intellectual limitations preclude his ability to perform most, if not all, of the work cited by

the ALJ. Plaintiff therefore requests the Commissioner's final decision be reversed and remanded to permit a period of disability commencing January 31, 2001. Alternatively, Plaintiff requests the matter be remanded to allow additional evidence and to conduct further proceedings.

In response, the Commissioner argues the ALJ's findings are supported by substantial evidence. The Commissioner maintains Plaintiff failed to meet his burden of showing his impairment met or medically equaled a listed impairment. Additionally, the Commissioner maintains the ALJ properly assessed Plaintiff's ability to perform work related activities and properly determined that Plaintiff could perform other work existing in the national economy. Accordingly, the Commissioner requests her final decision be affirmed.

### B.    Summary of the Evidence Before the ALJ

Plaintiff was born July 22, 1962, and was 40 years of age at the time the ALJ conducted the administrative hearing. (Tr. 36). Plaintiff claims an inability to work since June 11, 1998, due to nerve damage, anxiety disorder, seizures and pain in his neck, left shoulder, arm and back.[2] (Tr. 17). He possesses a seventh grade education and his past relevant work includes employment as a construction worker (roofer) and logger. (Tr. 36-38). The nature of Plaintiff's past work required exertional levels ranging from heavy to very heavy.

---

[2]Plaintiff subsequently amended his alleged onset date to January 31, 2001.

-3-

The record reveals the following relevant medical information. Plaintiff sustained a work-related back injury on June 11, 1998.[3] An MRI of his lumbar and thoracic spine revealed a diffuse annular bulge at L5-S1 without any significant flattening of the thecal sac and incidental findings of conjoined right L5-S1 nerve roots. (Tr. 281). Dr. Abraham Rogozinski, an orthopedist, opined the conditions pre-existed Plaintiff's work injury. Plaintiff received conservative treatment and participated in physical therapy for approximately one and one-half months. In a physical capacity evaluation dated January 7, 1999, Jasmine Dy, R.R.T. opined that Plaintiff remained capable of performing light to medium work.

Plaintiff subsequently presented to the emergency room on January 13, 2001, complaining of left shoulder pain. Plaintiff reported the condition resulted from a previous injury sustained in an automobile accident. Plaintiff further reported he was treated with epidural steroid injections however they provided no lasting pain relief. X-rays revealed arthritis in his left shoulder without significant spur formation. (Tr. 358).

Plaintiff was subsequently referred to Walter F. Ray, M.D., a treating neurologist. On March 14, 2001, during his initial examination, Dr. Ray noted Plaintiff had a six month history of severe left arm pain and weakness. Additional notes reveal Plaintiff experienced crepitus and significant pain around his left shoulder accompanied by decreased strength and range of motion. Based upon his examination, Dr. Ray concluded Plaintiff suffered neuralgic amyotrophy and prescribed Neurontin. (Tr. 313).

---

[3]Plaintiff received a worker compensation settlement as a result of the work-related injury. (Tr. 147).

Additional diagnostic studies revealed Plaintiff suffered multi-level cervical radicular dysfunction at C5 through C8 and ulnar nerve entrapment at the left elbow. (Tr. 351). Based upon the results, Dr. Ray diagnosed left brachial plexopathy and referred Plaintiff to a pain management clinic.

On May 11, 2001, Walter Faillace, M.D., a consulting neurologist, opined Plaintiff suffered sympathetic causalgia secondary to blunt trauma of his left shoulder. He noted obvious atrophy of Plaintiff's left shoulder motor groups as well as "spinatus and interosseus muscle, biceps, and intrinsics of the left hand." (Tr. 345). Plaintiff's left hand was also noticeably cooler than his right hand. Id. Dr. Faillace referred Plaintiff to pain management and physical therapy. Id. Dr. Faillace also prescribed Neurontin, Oxycodone, and Soma. Id.

In August 2001, Dr. Melchor Carbonell, a neurologist, began treating Plaintiff's condition. He noted Plaintiff was unable to use his left arm. Dr. Carbonell treated Plaintiff with pain medication and referred him to pain management. Dr. Carbonell recommended Plaintiff undergo a psychiatric evaluation for anxiety and depression. Plaintiff returned to Dr. Ray in December 2001, who discharged Plaintiff from his care. (Tr. 444-445). Dr. Ray explained that he could provide no further treatment options for Plaintiff's condition. Id. Dr. Ray opined that the medication necessary to treat Plaintiff's shoulder and neck pain caused drowsiness and that, by reason of education and experience, Plaintiff was precluded from doing any substantial gainful activity. (Tr. 445).

Plaintiff presented to the emergency room on March 24, 2003, reporting seizure activity. Plaintiff further reported he had previously experienced similar episodes at least three to four times when he had not taken his medication.

Plaintiff began treatment with Anuj Sharma, D.O. in April 2003. Dr. Sharma noted Plaintiff experienced pain in his left shoulder and arm. He further noted abnormalities in Plaintiff's left hand. Dr. Sharma maintained Plaintiff on a medication regimen of Xanax, Methadone, Soma and Lexapro. Dr. Sharma later opined that Plaintiff's condition medically equaled Listing 1.04 of the Listed Impairments (disorders of the spine).

On May 14, 2003, Phillip Yates, Ph. D., a psychologist, performed a psychological examination at the request of Plaintiff's counsel. (Tr. 467). Based upon his interview of Plaintiff, review of Plaintiff's academic records, and the results of Plaintiff's diagnostic testing, Dr. Yates concluded Plaintiff's overall intellectual function fell within the mild range of mental retardation. (468-472). Plaintiff demonstrated a full-scale intelligence quotient ("IQ") of 59. Id. Tests revealed Plaintiff's word identification at the third grade level, math computations at the 3.8 grade level, and spelling at the 1.5 grade level. Id. Dr. Yates further concluded Plaintiff's performance did not evidence a pattern of forgotten information that could have been reasonably present in Plaintiff's knowledge base. (Tr. 468).

### C.   Summary of the ALJ's Decision

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § § 404.1520. First, if a claimant is working at a substantial gainful activity, he is not

disabled. 29 C.F.R. § 404.1520(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(a)(v). The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date, January 31, 2001. (Tr. 27). At step two, the ALJ found Plaintiff suffered left shoulder arthritis and borderline intellectual functioning. Id. At step three, the ALJ found Plaintiff's impairments were severe within the meaning of the Social Security Regulations ("Regulations"), but were not severe enough to meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27). At step four, the ALJ found Plaintiff was unable to perform any of his past work. (Tr. 28). At step five, relying in part on the testimony of a vocational expert, the ALJ found Plaintiff could perform other work existing in the national

economy, specifically employment as a counter clerk, photo finisher, furniture rental consultant and usher. Id.

## III. ANALYSIS

### A. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995), citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979

F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

B.  Definition of Disability

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 20 C.F.R. §§ 404.1505-404.1511.

C.  Meeting or Medically Equaling a Listed Impairment

The Regulations provide a listing of impairments which are considered severe enough to prevent a person from performing gainful activity. See 20 C.F.R. Part 404, Subpart P, Appendix 1. By meeting a listed impairment or otherwise establishing equivalence, a claimant is presumptively determined to be disabled regardless of his age, education or work experience. See 20 C.F.R. § 404.1511.

To "meet" a listed impairment, a claimant must have a diagnosis included in the listings and must provide medical reports documenting that the conditions meet the specific criteria of the listed impairment including the duration requirement. See 20 C.F.R. § 404.1525(a)-(d). To "equal" a listed impairment, the medical findings must be "at least equal in severity and duration to the listed findings." See 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a

listed impairment, the ALJ should consider symptoms of the impairment, signs and laboratory findings to determine whether the combination is medically equal to any listed impairment. See id. Additionally, the Regulations and case law state that when a claimant's impairment is not a listed impairment, the ALJ should consider the listing "most like" or "closely analogous" to the claimant's impairments. See C.F.R. §§ C.F.R. 404.1526(a), 416.926(a)(2); see also Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

D.  Issues Presented

1. **Whether ALJ erred in determining that Plaintiff's impairment did not equal Listing 1.04A**

Plaintiff asserts the condition of his neck, shoulder and upper left extremity is "most like" the requirements necessary to medically equal Listing 1.40A. Plaintiff therefore argues the ALJ was required to consider Listing 1.40A in assessing the severity of his condition. Additionally, Plaintiff argues the ALJ ignored the opinion of Dr. Sharma, his treating physician, who concluded Plaintiff's condition medically equaled Listing 1.40A. The Commissioner on the other hand asserts Plaintiff's shoulder impairment most closely resembles the requirements of Listing 1.02B; however, the evidence presented does not show Plaintiff's impairment medically equals the listing.[4]

---

[4] The Commissioner suggests that, because Plaintiff failed to argue his impairment met or equaled the requirements of Listing 1.03, the argument is deemed waived. The Court disagrees. Although Plaintiff may or may not have cited the correct listed impairment in presenting his argument, he clearly raised the issue of whether the ALJ properly considered the severity of his impairment. Most notably, the Commissioner consistently cites to Listing 1.03 but presents her argument within the context of Listing 1.02 entitled "Major dysfunction of a joint(s) (due to any cause)." See 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 1.02 and 1.03.

In her decision, the ALJ provided an extensive summary of the medical evidence presented. Based upon her review of that evidence, in part, the ALJ found that Plaintiff had arthritis in his left shoulder and that the impairment was severe. She further recognized that Plaintiff's inability to move his upper extremity presented a "severe limitation" on his ability to perform work related activities; however, it did not preclude his ability to work. (Tr. 24). Notably, Plaintiff does not challenge the ALJ's findings; instead, Plaintiff asserts the condition of his neck, shoulder and upper left extremity significantly limits his ability to perform work related activities–i.e., the combination of his impairments is severe. Based upon that assertion, Plaintiff argues the combination of impairments is severe enough to medically equal Listing 1.04A, the listing for disorders of the spine.

The Court notes that as an initial matter, at step two of her analysis, the ALJ impliedly discounted evidence showing Plaintiff had any medically determinable impairment involving his neck (cervical spine). Based upon its review of the evidence presented as well as the ALJ's own decision, the Court is unable to ascertain her reasons for doing so. Among other things, she noted: (1) Plaintiff sustained a work-related back injury in June 1998; (2) diagnostic tests revealed a diffuse annular bulge at L5-S1, conjoined right L5-S1 nerve roots and disc protrusion at C3-4; and (3) Plaintiff displayed symptoms of multi-level cervical radiculopathy. Although the ALJ provided a thorough recount of problems and diagnoses related to Plaintiff's alleged neck impairment, she failed to provide any meaningful analysis of the medical opinions provided by Plaintiff's treating physicians or her reasons for rejecting them.

-11-

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callaghan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Edwards, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); see also Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a

treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); see also 20 C.F.R. § 404.1527(d)(2).

Here, if the ALJ did in fact properly consider the opinions of Plaintiff's treating physicians regarding the nature and severity of his alleged neck impairment, it is not evident in her decision. The ALJ's decision is simply void of any discussion involving her rationale. Absent such discussion, it is virtually impossible for the Court to provide meaningful review of whether the severity of Plaintiff's alleged impairment(s) equals Listing 1.04A or any other listed impairment.[5]

Because the ALJ failed to state the weight she accorded the opinions regarding Plaintiff's alleged neck impairment, this cause is due to be remanded to the Commissioner for further proceedings not inconsistent with this decision. This Court expresses no opinion as to whether the medical opinions must be accepted or rejected; however, the ALJ is reminded that she must "state the weight [she] accords to each item of . . . evidence and the reasons for [her] decisions to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing Gibson v. Heckler, 779 F.2d 619 (11th Cir. 1986)). In the absence of statements about the weight given to the medical opinions and the reasons for rejecting them, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is

---

[5]The ALJ in this case failed to cite each of the specific listings she found applicable in assessing the severity of Plaintiff's impairment. When considering an appeal of a final administrative decision, the Court is concerned with tracing the ALJ's logic and reasoning. Therefore, while an ALJ's failure to explicitly refer to a relevant listing alone does not necessitate remand, Rice v. Barnhart, 384 F.3d 363, 360-70 (7th Cir. 2004), remand may be necessary where failure to explicitly refer to a relevant listing is combined with a perfunctory analysis. See Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003).

rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

### 2. Whether the ALJ erred in determining Plaintiff could perform other work existing in the national economy

After determining Plaintiff could not perform the requirements of his past relevant work, at step five of the sequential evaluation, the ALJ found that Plaintiff could do other jobs existing in significant numbers in the national economy. Relevant to the issue presented, the ALJ determined Plaintiff had a limited education but was capable of performing the demands of unskilled work. As examples of the work she found Plaintiff could perform, the ALJ cited: unskilled counter clerk, photo finisher; light unskilled furniture rental consultant; and unskilled usher. In sum, Plaintiff argues that he does not possess the level of academic ability necessary to perform such work. The Commissioner argues the ALJ's findings are supported by substantial evidence.

Based upon the Court's review of the evidence presented, particularly the hypothetical questions posed to the VE, the Court concludes substantial evidence supports the ALJ's findings. The hypothetical questions accurately reflect Plaintiff's age, educational background as established by the record and history of performing unskilled work. Accordingly, the Court rejects Plaintiff's argument.

## IV. CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to (1) reconsider the medical

opinions regarding Plaintiff's alleged neck impairment; and, if they are rejected, explain fully why they are being rejected; and (2) conduct any other proceedings deemed appropriate. Thereafter, the Clerk is directed to close the file.

**ORDERED**:

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 29th day of September, 2005.

*[signature]*
MONTE C. RICHARDSON
United States Magistrate Judge

Copies to:

Counsel of Record

Any Unrepresented Party