UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN W. NOLAN,

        Plaintiff,

vs.                           Case No.  3:04-cv-491-J-20MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER

**THIS CAUSE** is before the Court on Plaintiff, Steven Nolan's Complaint (Doc. 1),

seeking judicial review of a final administrative decision denying his claim for Social

Security disability benefits and Supplemental Security Income payments.[1]

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, disability insurance benefits

("DIB") and Supplemental Security Income ("SSI") on April 23, 2001, alleging he

became unable to work on June 11, 1998.  (Tr. 154-156).  The Social Security

Administration denied Plaintiff's application initially and upon reconsideration.  (Tr. 112-

122).  Plaintiff subsequently filed a timely request for a hearing on the matter.  (Tr. 110).

Plaintiff's request was granted and a hearing was conducted by an administrative law

judge ("ALJ") on August 15, 2003.  (Tr. 30-90).

_____

[1]  The parties have consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Doc. 4).

The ALJ issued a decision on November 4, 2003, concluding Plaintiff was not disabled.  (Tr. 16-28).  Under sections 216(i), 223, 1602 and 1614(a)(3)(A) respectively, of the Social Security Act, the ALJ further concluded Plaintiff was not entitled to a period of disability or DIB, and ineligible for SSI payments.  Id.  Plaintiff filed a timely request for review by the Appeals Council which was denied on April 16, 2004.  (Tr. 5-7). Consequently, the ALJ's November 4, 2004 decision became the final decision of the Commissioner.  See 20 C.F.R. §§ 404.955, 404.981.

Plaintiff then filed a timely Complaint (Doc. 1) in the United States District Court on August 26, 2004.  The Court issued a Memorandum Opinion and Order (Doc. 21) on September 29, 2005 reversing the Commissioner's decision and remanding for further proceedings.  Judgment was entered September 30, 2005 (Doc. 22).  On October 12, 2005, the Commissioner filed a motion to alter or amend the judgment.  (Doc. 23).  The Court considered this motion, granted it and vacated its original Memorandum Opinion and Order.  (Doc. 25).   Accordingly, the Court now issues this Memorandum Opinion and Order.

## II.    NATURE OF DISABILITY CLAIM

### A.    The Complaint

In his original Memorandum in support of the Complaint (Doc. 15), Plaintiff presented two arguments.  First, Plaintiff argued the ALJ erred by concluding the severity of his alleged neck, shoulder and left upper extremity impairments did not medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, Plaintiff contended proper consideration of the listed impairment most

analogous to his condition directed a finding that it medically equaled Listing 1.04A

(disorders of the spine).  Second, Plaintiff argued the ALJ's finding that he could

perform other work existing in the national economy was not supported by substantial

evidence.  According to Plaintiff, his intellectual limitations precluded his ability to

perform most, if not all, of the work cited by the ALJ.  Plaintiff therefore requested the

Commissioner's final decision be reversed and remanded to permit a period of disability

commencing January 31, 2001.  Alternatively, Plaintiff requested the matter be

remanded to allow additional evidence and to conduct further proceedings.

In response, the Commissioner argued the ALJ's findings were supported by

substantial evidence.  The Commissioner maintained Plaintiff failed to meet his burden

of showing his impairment met or medically equaled a listed impairment.  Additionally,

the Commissioner argued the ALJ properly assessed Plaintiff's ability to perform work

related activities and properly determined that Plaintiff could perform other work existing

in the national economy.

### B.    Summary of the Evidence Before the ALJ

Plaintiff was born July 22, 1962, and was 40 years of age at the time the ALJ

conducted the administrative hearing.  (Tr. 36).  Plaintiff claims an inability to work since

June 11, 1998, due to nerve damage, anxiety disorder, seizures and pain in his neck,

left shoulder, arm and back.[2]  (Tr. 17).  He possesses a seventh grade education and

his past relevant work includes employment as a construction worker (roofer) and

---

[2] Plaintiff subsequently amended his alleged onset date to January 31, 2001.

logger.  (Tr. 36-38).  The nature of Plaintiff's past work required exertional levels ranging from heavy to very heavy.

The record reveals the following relevant medical information.  Plaintiff sustained a work-related back injury on June 11, 1998.[3]  An MRI of his lumbar and thoracic spine revealed a diffuse annular bulge at L5-S1 without any significant flattening of the thecal sac and incidental findings of conjoined right L5-S1 nerve roots.  (Tr. 281).  Dr. Abraham Rogozinski, an orthopedist, opined the conditions pre-existed Plaintiff's work injury.  Plaintiff received conservative treatment and participated in physical therapy for approximately one and one-half months.  In a physical capacity evaluation dated January 7, 1999, Jasmine Dy, R.R.T. opined that Plaintiff remained capable of performing light to medium work.

Plaintiff subsequently presented to the emergency room on January 13, 2001, complaining of left shoulder pain.  Plaintiff reported the condition resulted from a previous injury sustained in an automobile accident.  Plaintiff further reported he was treated with epidural steroid injections, however, they provided no lasting pain relief.   X-rays revealed arthritis in his left shoulder without significant spur formation.  (Tr. 358).

Thereafter, Plaintiff was referred to Walter F. Ray, M.D., a treating neurologist. On March 14, 2001, during his initial examination, Dr. Ray noted Plaintiff had a six month history of severe left arm pain and weakness.  Additional notes revealed Plaintiff experienced crepitus and significant pain around his left shoulder accompanied by

---

[3] Plaintiff received a worker compensation settlement as a result of the work-related injury. (Tr. 147).

decreased strength and range of motion.  Based upon his examination, Dr. Ray concluded Plaintiff suffered neuralgic amyotrophy and prescribed Neurontin.  (Tr. 313).

Dr. Ray referred Plaintiff to Shands Jacksonville for EMG/Nerve Conduction studies, which were conducted on March 14, 2001.  (Tr. 351-52).  The studies revealed "electrophysiologic abnormalities ... most suggestive of multi-level (L) cervical radicular dysfunction."  (Tr. 352).  As a result of these studies, Plaintiff was sent for an MRI of his cervical spine, which was performed the next day, March 15, 2001.  (Tr. 350).  The MRI was unremarkable and did not reveal any radicular dysfunction.  Id.  Dr. Ray diagnosed left brachial plexopathy and referred Plaintiff to a pain management clinic.

On May 11, 2001, Walter Faillace, M.D., a consulting neurologist, opined Plaintiff suffered sympathetic causalgia secondary to blunt trauma of his left shoulder.  He noted obvious atrophy of Plaintiff's left shoulder motor groups as well as "spinatus and interosseus muscle, biceps, and intrinsics of the left hand."  (Tr. 345).  Plaintiff's left hand was also noticeably cooler than his right hand.  Id.  Dr. Faillace referred Plaintiff to pain management and physical therapy and prescribed Neurontin, Oxycodone, and Soma.  Id.

In August 2001, Dr. Melchor Carbonell, a neurologist, began treating Plaintiff.  He noted Plaintiff was unable to use his left arm.  Dr. Carbonell treated Plaintiff with pain medication and referred him to pain management.  Dr. Carbonell recommended Plaintiff undergo a psychiatric evaluation for anxiety and depression.  Plaintiff returned to Dr. Ray in December 2001, who discharged Plaintiff from his care.  (Tr. 444-445).  Dr. Ray explained that he could provide no further treatment options for Plaintiff's condition.  Id.

Dr. Ray opined that the medication necessary to treat Plaintiff's shoulder and neck pain caused drowsiness and that, by reason of education and experience, Plaintiff was precluded from doing any substantial gainful activity.  (Tr. 445).

On January 31, 2002, Plaintiff underwent another MRI of his cervical spine.  (Tr. 443).  The MRI revealed "[m]arginal spurs ... originating from C3-C4 and C4-C5."  Id. The spurring of C3-C4  appeared to involve "the Luschka joint with mild foraminal encroachment bilaterally with similar but lesser changes at C4-C5" and "[n]o focal disk protrusions" or other abnormalities were seen.  Id.

Plaintiff presented to the emergency room on March 24, 2003, reporting seizure activity.  Plaintiff further reported he had previously experienced similar episodes at least three to four times when he had not taken his medication.

Plaintiff began treatment with Anuj Sharma, D.O. in April 2003.  Dr. Sharma noted Plaintiff experienced pain in his left shoulder and arm.  He further noted abnormalities in Plaintiff's left hand.  Dr. Sharma maintained Plaintiff on a medication regimen of Xanax, Methadone, Soma and Lexapro.  Dr. Sharma later opined that Plaintiff's condition medically equaled Listing 1.04 of the Listed Impairments (disorders of the spine).  (Tr. 461-62).

On May 14, 2003, Phillip Yates, Ph. D., a psychologist, performed a psychological examination at the request of Plaintiff's counsel.  (Tr. 467).  Based upon his interview of Plaintiff, review of Plaintiff's academic records, and the results of Plaintiff's diagnostic testing, Dr. Yates concluded Plaintiff's overall intellectual function fell within the mild range of mental retardation.  (468-472).  Plaintiff demonstrated a full-

scale intelligence quotient ("IQ") of 59.  Id.  Tests revealed Plaintiff's word identification at the third grade level, math computations at the 3.8 grade level, and spelling at the 1.5 grade level.  Id.  Dr. Yates further concluded Plaintiff's performance did not evidence a pattern of forgotten information that could have been reasonably present in Plaintiff's knowledge base.  (Tr. 468).

### C.    Summary of the ALJ's Decision

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(a)(4)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date, January 31, 2001.  (Tr. 18, 27).  At step

two, the ALJ found Plaintiff suffered left shoulder arthritis and borderline intellectual functioning.  (Tr. 21, 27).  At step three, the ALJ found Plaintiff's impairments were severe within the meaning of the Social Security Regulations, but were not severe enough to meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  Specifically, the ALJ noted that Plaintiff's impairments did not "meet or medically equal any section under 1.00 Musculoskeletal System (revised), 11.00 Neurological Disorders (revised), or 14.00 Immune System (revised)."  Id.

The ALJ further determined that Plaintiff retained the residual functional capacity to "perform unskilled light work activity with no more than occasional use of his nondominant left upper extremity."  (Tr. 25, 28)  In making this determination, the ALJ found Plaintiff's allegations of disabling pain and limitations were not fully credible.  (Tr. 24).  At step four, the ALJ found Plaintiff was unable to perform any of his past work.  (Tr. 26, 28).  At step five, relying in part on the testimony of a vocational expert, the ALJ found Plaintiff could perform other work existing in the national economy, specifically employment as a counter clerk, photo finisher, furniture rental consultant and usher.  (Tr. 27, 28).  Consequently, Plaintiff was not disabled within the meaning of the Social Security Act.

### D.   Evidence Presented to the Appeals Council

After receiving the ALJ's decision, Plaintiff filed a Request for Review of Hearing Decision/Order.  (Tr. 12).  According to Plaintiff, he provided the Appeals Council with new evidence consisting of a questionnaire completed by Dr. Walter F. Ray, M.D. dated January 20, 2004 in which Dr. Ray opined that Plaintiff's impairments were medically

equal to listing 1.04A.  However, the Appeals Council did not reference this questionnaire and it was not made a part of the record.  (Tr. 5-8).

**III.    ANALYSIS**

**A. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues Presented

#### 1.     Whether ALJ erred in determining that Plaintiff's impairment did not equal Listing 1.04A

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he or she is disabled. Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986); Wilkinson v. Bowen, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. Bell, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). When a plaintiff contends an impairment "equals" a listing, he must "present evidence which describes how the impairment has such an equivalency." Wilkinson, 847 F.2d at 662. In determining "medical equivalence, the [Commissioner] must consider the medical opinion of one or more designated physicians on an advisory basis." Id.

Listing 1.04 provides in relevant part:

> Disorders of the spine . . . (e.g., herniated nucleus pulposus,
> spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda
> equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion of
> the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.  In both his original memorandum of law and in his response to Defendant's Motion to Alter or Amend the Judgment, Plaintiff asserts the ALJ erred in failing to find his condition medically equal to Listing 1.40A. (Docs. 15 and 24).  Specifically, Plaintiff argues the ALJ erred in discounting the opinion of Dr. Sharma, his treating physician, who concluded Plaintiff's condition medically equaled Listing 1.40A.  Plaintiff also claims there are other medical records demonstrating that his condition was medically equivalent to Listing 1.04A.  As a result, Plaintiff asks outright reversal of the Commissioner's decision or alternatively, for a remand for the ALJ to consider the opinion of Dr. Ray in his questionnaire submitted to the Appeals Council.[4]

The Commissioner responds that Plaintiff has failed to show his impairment met all of the criteria for Listing 1.04.  Specifically, the Commissioner claims the ALJ properly discounted Dr. Sharma's opinion that Plaintiff's impairments were medically

---

[4] In his response to the Commissioner's motion to alter or amend the judgment, Plaintiff suggests that remand to the ALJ may be necessary so that the ALJ could utilize the testimony of a medical expert on the issue of equivalency to Listing 1.04A.  (Doc. 24, p.2).

equivalent to listing 1.04A and that the remaining evidence failed to show a "compromise of a nerve root (including the cauda equina) or the spinal cord."  (Doc. 19, p.8).

The Court will first consider Plaintiff's argument that the ALJ improperly discounted Dr. Sharma's opinion that Plaintiff's impairments equaled listing 1.04A.  The Court will then consider whether remand is appropriate for the ALJ to consider the questionnaire completed by Dr. Ray, which questionnaire was first submitted to the Appeals Council.  Finally, the Court will address Plaintiff's claims that other medical evidence supports his assertion that his condition equals Listing 1.04A.

Plaintiff is correct that ordinarily the opinion of a treating physician must be given substantial weight.  See Lewis v. Callaghan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 937 F.2d at 583; 20 C.F.R. § 404.1527(d).  Indeed, if a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  However, if a treating physician's opinion is unsupported by objective medical evidence or is wholly conclusory, the ALJ may discount it.  See Edwards, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Moreover, a medical opinion on the ultimate issue of disability, even by a treating physician, is never controlling or entitled to special significance.  See SSR

96-5p.  The ALJ is responsible for making the ultimate determination about whether a

claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).

In the instant case, Dr. Sharma completed a form prepared by Plaintiff's attorney

asking whether Plaintiff's condition was "medically equivalent in severity (considering

pain and loss of function)" to Listing 1.04A.  (Tr. 461).  Dr. Sharma simply checked "yes"

on the form and opined that the probable duration of Plaintiff's condition at this level of

severity was three years. (Tr. 461-62).  The ALJ noted Dr. Sharma's opinion that

Plaintiff's impairments equaled listing 1.04A was not sufficiently supported by medical

evidence.  (Tr. 25).  Specifically, the ALJ stated Dr. Sharma's medical records did "not

indicate an impairment or combination of impairments with the required findings and/or

functional limitations that would meet or equal a listed impairment and result in

presumptive disability."  Id.  The ALJ further noted that Plaintiff did not begin treatment

with Dr. Sharma until April 2003.  Id.

The undersigned finds the ALJ properly discredited Dr. Sharma's opinion that

Plaintiff's impairments were medically equivalent to listing 1.04A.  The Court agrees with

the ALJ's determination that Dr. Sharma's opinion that Plaintiff's impairments equaled

listing 1.04A was not sufficiently supported by medical evidence.  (Tr. 25).  As the ALJ

noted, Dr. Sharma's medical records did "not indicate an impairment or combination of

impairments with the required findings and/or functional limitations that would meet or

equal a listed impairment and result in presumptive disability."  Id.  Plaintiff argues that

in addition to his own records, Dr. Sharma was also provided with "the records of

[Plaintiff's] preceding physicians to study."  (Doc. 15, p.11).  However, the Court has

reviewed the records cited by Dr. Sharma as supporting his opinion (see Tr. 462) and

finds they do not support a conclusion that Plaintiff's condition is equal to Listing 1.04A.

As noted below, the record is devoid of any evidence of a spinal disorder resulting in

compromise of a nerve root.  Accordingly, the ALJ did not commit error in discounting

Dr. Sharma's opinion that Plaintiff's condition was equivalent to Listing 1.04A.

The Court also finds that remand is not necessary for the ALJ to consider Dr.

Ray's opinion that Plaintiff's impairments are medically equal to listing 1.04A.  A

determination of whether remand for consideration of new evidence is appropriate is a

*de novo* proceeding.  Cherry v. Heckler, 760 F.2d 1186, 1194 (11th Cir. 1985); Smith v.

Bowen, 792 F.2d 1547, 1550 (11th Cir. 1986); Caulder v. Bowen, 791 F.2d 872, 875

(11th Cir. 1986).  Sentence six of 42 U.S.C. § 405(g) provides, in pertinent part, that "the

court ... may at any time order additional evidence to be taken before the Commissioner

of Social Security, but only upon a showing that there is new evidence which is material

and that there is good cause for the failure to incorporate such evidence into the record

in a prior proceeding ... "  42 U.S.C. § 405(g).

The Eleventh Circuit has determined that before a remand is warranted based on

newly submitted evidence, the claimant must establish that (1) there is new,

noncumulative evidence, (2) the evidence is material (i.e. relevant and probative so that

there is a reasonable possibility that it would change the administrative result), and (3)

there is good cause for the failure to submit the evidence at the administrative level.

Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) (citing Cannon v. Bowen, 858 F.2d

-14-

1541 (11th Cir. 1988) and <u>Keeton v. Dept. of Health and Human Services</u>, 21 F.3d 1064, 1067 (11th Cir. 1994)).

The evidence submitted by Plaintiff to the Appeals Council consists of a questionnaire completed by Dr. Ray.  The questionnaire is identical to the one completed by Dr. Sharma (Tr. 461-62) and included in the record before the ALJ.  As to the first factor, the evidence is "new and noncumulative" if it sheds new light on ill-developed issues or raises issues not previously addressed in the record.  <u>Porter v. Shalala</u>, 1994 WL 686920 *2 (N.D. Ala.1994); <u>Blake v. Massanari</u>, 2001 WL 530697 *8 (S.D. Ala. 2001) (both cases citing, <u>Cherry</u>, 760 F.2d 1186 and <u>Milano v. Bowen</u>, 809 F.2d 763 (11th Cir. 1987)).  Dr. Ray's questionnaire does not raise issues that were previously unaddressed or ill-developed.  Indeed, as noted above, it is identical to the questionnaire completed by Dr. Sharma and reaches the same conclusion.

As to the second prong, the undersigned also finds Plaintiff has not shown the new evidence is material.  "To be material, the evidence must be relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." <u>Caulder</u>, 791 F.2d at 877.  While the evidence is certainly relevant in that it relates to Plaintiff's condition, Plaintiff has failed to demonstrate any reasonable possibility that this new evidence would change the administrative outcome.  The ALJ considered Dr. Sharma's questionnaire reaching the same conclusion and rejected it as being conclusory and unsupported by his medical records.  The undersigned believes the ALJ would do the same with Dr. Ray's questionnaire.  Dr. Ray opines that Plaintiff's condition is medically equal to listing 1.04A, however, like Dr. Sharma's opinion, it is not

supported by his medical records or records from other medical providers. Accordingly, the undersigned finds Plaintiff has failed to satisfy the requirements for a sentence six remand to consider Dr. Ray's questionnaire.

The Court will now consider Plaintiff's arguments that other evidence in the record supports his claim that his condition is medically equivalent to Listing 1.04A. Plaintiff cites to four specific medical findings to support his claim that the ALJ erred in failing to find Plaintiff's impairments were medically equivalent to Listing 1.04A: (1) the positive EMG/Nerve Conduction Studies from March 14, 2001; (2) Dr. John Hunt, M.D.'s findings on June 6, 2001 of significant atrophy of the left upper extremity including deltoid, biceps and triceps; (3) Dr. Sharma's findings from April 15, 2003 of "sensory diminished with light touch in the LUE"; and (4) the January 31, 2002 MRI results. (Doc. 15, pp. 12-13).

The Court has reviewed this medical evidence and summarizes it as follows. On March 14, 2001, Plaintiff underwent EMG/Nerve Conduction studies. The results were abnormal with:

> electrophysiologic abnormalities ... most suggestive of multi-level (L) cervical radicular dysfunction. This appears to be most severe at C5 although the C6, C7 and even C8 levels appear to be affected. There is also evidence on this study for a (L) ulnar nerve entrapment at the elbow. This appears to be moderate in severity with evidence for prominent demyelinating change but not sensory axon loss. I cannot comment for sure regarding the loss of motor axons as he has superimposed C8 radicular dysfunction here that could cause loss of motor potential amplitude on the (L) side.

(Tr. 352).[5]  On June 6, 2001, Plaintiff reported to the Center for Pain Management at Shands.  In a clinic note by Sonal Cochran, PA, it was noted that Plaintiff's "[e]xamination reveal[ed] significant atrophy of the left upper extremity including deltoid and biceps as well as triceps significantly."  (Tr. 343).  Plaintiff was diagnosed with complex regional pain syndrome - left upper extremity.  Id.  Plaintiff also points to an initial office visit note from Dr. Sharma dated April 15, 2003 which noted that Plaintiff's left upper extremity sensory was "diminished with light touch."  (Tr. 453).

Finally, on January 31, 2002, Plaintiff underwent a MRI cervical with and without contrast.  The results indicated Plaintiff's

> vertebral body heights, signal intensities and alignment [were] normal.  The spinal cord demonstrate[d] no focal areas of abnormal signal intensity and no areas of abnormal enhancement [were] seen.  Marginal spurs [were] seen originating from C3-C4 and C4-C5.  Spurring of C3-C4 also appear[ed] to involve [] the Luschka joint with mild foraminal encroachment bilaterally with similar but lesser changes at C4-C5.  No focal disk protrusions [were] seen and no other abnormality [was] apparent.

(Tr. 443).

According to Plaintiff, this evidence demonstrates that Plaintiff suffered from a spinal abnormality which limited his range of motion in his upper left extremity and left him with atrophy, and sensory loss in his left upper extremity and as such, he has shown medical equivalence to Listing 1.04A.  The Commissioner disagrees and argues

---

[5]  Plaintiff fails to mention, however, the MRI performed on his cervical spine the next day, March 15, 2001, which was unremarkable.  (Tr. 350).

that Plaintiff cannot attempt to make his shoulder injury meet a listing involving spinal

disorders.  (Doc. 19).

     Plaintiff correctly notes the dearth of case law addressing the issue of

equivalency to a listing.  The regulations provide some guidance.  Section 404.1526(a)

provides that a claimant's impairment is medically equivalent to a listed impairment if

"the medical findings are at least equal in severity and duration to the listed findings."

20 C.F.R. §404.1526(a).  The section goes on to say that the Secretary makes the

decision regarding medical equivalency by comparing the claimant's "symptoms, signs

and laboratory findings" as shown in the medical evidence, with the medical criteria

contained in the listed impairment.  Id.  If the claimant's impairment is not listed, the

Secretary considers the listed impairment most like the claimant's impairment to

determine whether the claimant's impairment is "medically equivalent."  Id.

     In the instant case, Plaintiff has not presented any evidence demonstrating a

spinal disorder resulting in a compromise of a nerve root (including the cauda equina) or

the spinal cord.  The only evidence regarding spinal disorders cited by Plaintiff are not

sufficient to satisfy Plaintiff's burden.  The results of the EMG/nerve conduction studies

appear to show a disorder of the cervical spine with the possible involvement of a nerve

root (Tr. 351-52), however, the follow-up MRI revealed no abnormalities of the cervical

spine (Tr. 350).  The ALJ specifically noted these results in her opinion.  (Tr. 19).

Further, the MRI on January 31, 2002 revealed only marginal spurring and no nerve

root involvement.  (Tr. 443).  While Plaintiff has presented evidence demonstrating

several of the requirements of Listing 1.04A, this is not sufficient to find medical

equivalency.  As the Supreme Court has noted, a claimant attempting to prove medical

equivalence, must proffer medical findings which are equal in severity to **all** the criteria

for the most similar listed impairment.  Sullivan v. Zebley, 493 U.S. 521, 530-531, 110

S.Ct. 885, 891 (1990) (emphasis in original).  As discussed above, Plaintiff has failed to

do so.

Further, "[a] claimant cannot qualify for benefits under the 'equivalence' step by

showing that the overall functional impact of his unlisted impairment or combination of

impairments is as severe as that of a listed impairment." Robinson v. Barnhart, 2005 WL

2148931 *6 (W.D. Tex. 2005) (citing, Sullivan, 493 U.S. at 531).  Plaintiff has failed to

present specific evidence showing that the medical findings related to his combination

of his impairments are at least equal in severity and duration to the requirements of

Listing 1.04A or any other listing.  As such, there is substantial evidence in the

administrative record to support the ALJ's finding that Plaintiff's combination of

impairments does not meet or equal Listing 1.04A.

### 2. Whether the ALJ erred in determining Plaintiff could perform other work existing in the national economy

After determining Plaintiff could not perform the requirements of his past relevant

work, at step five of the sequential evaluation, the ALJ found that Plaintiff could perform

other jobs existing in significant numbers in the national economy.  Relevant to the

issue presented, the ALJ determined Plaintiff had a limited education but was capable

of performing the demands of unskilled work.  As examples of the work she found

Plaintiff could perform, the ALJ cited unskilled counter clerk, photo finisher; light

unskilled furniture rental consultant; and unskilled usher.  Plaintiff argues that he does not possess the level of academic ability necessary to perform such work.  The Commissioner argues the ALJ's findings are supported by substantial evidence.

Based upon the Court's review of the evidence presented, particularly the hypothetical questions posed to the VE, the Court concludes substantial evidence supports the ALJ's  findings.  The hypothetical questions accurately reflect Plaintiff's age, educational background as established by the record and history of performing unskilled work.  Accordingly, the Court rejects Plaintiff's argument.

IV.    **CONCLUSION**

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.  Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this _9th_ day of March, 2006.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party